## HIGLEY & Co. v. MILLARD ET AL.

1. **Homestead:** INCUMBRANCE UPON: ANTECEDENT DEBT. Under the Code of 1851 and Revision of 1860 the homestead could be sold only to supply a deficiency existing after exhausting the other property of the debtor liable to execution, whether the debt existed before the purchase of the homestead, or was contracted afterward and secured by mortgage on the homestead.

2. ———: ———: NOTICE. A mortgage upon the homestead was of no validity unless both husband and wife united in the execution, and the record of it, therefore, imparted no notice to a subsequent purchaser.

3. **Vendor and Vendee:** TITLE BOND. The purchaser from one who has a title bond to the property but who at the time of the sale is occupying it as a homestead, and has become entitled to a conveyance thereof, has the superior equity to one who merely holds a note against the obligee in the title bond, even though the note ante-date the execution of the bond.

*Appeal from Black Hawk District Court.*

TUESDAY, APRIL 17.

ON the 17th day of August, 1855, J. R. Millard executed to Isaac N. Whittam a promissory note for the sum of

$344.50. On the 17th of January, 1856, said Millard purchased of B. M. Cooley lots 8 and 9 in block 59, in the town of Waterloo, and procured from him a bond for the conveyance of the property upon payment of the purchase price therein stipulated. This bond was recorded but was not acknowledged. J. R. Millard and Phebe, his wife, moved upon the premises and occupied them as their homestead. On the 2d day of November, 1857, whilst the premises were so occupied as a homestead, J. R. Millard, his wife not concurring therein, executed to Isaac N. Whittam a mortgage to secure the note above mentioned. Afterward said note and mortgage were assigned to plaintiffs.

On the 3d day of September, 1860, J. H. Leavitt and J. L. Cooley, administrators of the estate of B. M. Cooley, deceased, for the expressed consideration of one dollar executed to Phebe Millard a quit claim deed for said premises.

On the 27th day of March, 1862, Millard and his wife executed a warranty deed for said premises to Harvey C. Marsh.

On the 2d day of September, 1864, Marsh and wife conveyed said premises by warranty deed to the defendant, Josiah Dull.

On the 2d day of December, 1867, the plaintiffs commenced an action upon the note above named and for the foreclosure of the mortgage securing the same, making defendants therein all of the above named defendants in this action. All of the defendants, except J. R. Millard, filed in that action their joint answer, denying all the allegations of the petition, alleging that the mortgaged premises, at the date of the mortgage, belonged to Phebe Millard, that they were occupied by J. R. and Phebe Millard as their homestead, and that the mortgage was made without the consent or knowledge of Phebe Millard and was void. On the 21st day of September, 1869, judgment by default was entered against J. R. Millard for $829.60, with a decree of foreclosure. On the same day the plaintiffs, without prejudice, dismissed all proceedings as to all the other defendants, to which the defendants Phebe Millard and Josiah Dull excepted. On the 24th day of September, 1869, three days after said dismissal, this action was commenced, for the purpose of subjecting said premises to sale in satisfaction of

the judgment and decree of foreclosure against the defendant J. R. Millard. The court entered a decree for plaintiffs as prayed.

The defendants, Phebe Millard and Josiah Dull, appeal.

*Boies, Allen & Couch,* for appellants.

*Miller & Preston,* for appellees.

DAY, CH. J.—I. It is claimed by appellants that the mortgage upon the homestead, not having been concurred in by the wife, is void; whilst the appellees insist that the mortgage, having been executed for a debt contracted before the homestead was purchased, and for which the homestead is liable, is valid, and may be enforced, although not signed by the wife. The mortgage was executed in 1857, and its effect, if valid, is to be determined by section 1249 of the Code of 1851, 2281 of the Revision. This section is as follows: "It (the homestead) may be sold on execution for debts contracted prior to the passage of this law, or prior to the purchase of such homestead (except where otherwise declared) or for those created by written contract executed by the persons having the power to convey, and expressly stipulating that the homestead is liable therefor. But it shall not in such cases be sold, except to supply the deficiency remaining after exhausting the other property of the debtor which is liable to execution."

*1. HOMESTEAD: incumbrance upon: antecedent debt.*

It will be seen from this section that, under the law in force when this mortgage was executed, the homestead could be sold only to supply a deficiency existing after exhausting the other property of the debtor liable to execution, whether the debt existed before the purchase of the homestead, or was contracted afterward and secured by mortgage upon the homestead; so that the execution of a mortgage by the husband, upon the homestead, to secure a debt which existed before the purchase of the homestead, imposed no additional burden thereon, and in no way affected the rights of the wife. As to Phebe Millard it is immaterial whether the mortgage be considered as

valid or not, since in either event, under the section above quoted, the liability of the homestead is the same. But, as to innocent purchasers of the homestead, before judgment upon the debt so contracted, the question of the validity of such mortgage is very material, for, if void, the record of it would be to them no constructive notice, and, as against them, it would create no lien.

II. In March, 1862, Millard and wife executed a warranty deed of said premises to Harvey C. Marsh, and in September,

2. ——: ——: 1864, Marsh executed a like conveyance to the
notice.  defendant, Josiah Dull. These conveyances were made long before suit was commenced upon the note and mortgage in controversy. At the time of these conveyances there was nothing of record, anywhere, to impart notice that the property in question was liable for the debt to Whittam, unless it be the mortgage in question.

Section 1247 of the Code of 1851, 2279 of the Revision, provides that a conveyance of the homestead is of no validity, unless the husband and wife concur in and sign such conveyance. This mortgage, therefore, is invalid, and the record of it imparted no constructive notice to subsequent purchasers. If either Marsh or Dull is in all other respects entitled to the protection of an innocent purchaser, it must follow that the title of the defendant, Dull, cannot be burdened with the plaintiffs' judgment.

III. This brings us to consider the interest acquired by Marsh through his purchase from Millard and wife, in March, 1862.

The conveying part in the quit claim deed from the administrators of B. M. Cooley, is as follows: " In consideration
3. VENDOR  of one dollar, in hand paid by Phebe Millard, do
and vendee:
title bond.  hereby forever quit claim to the said Phebe Millard, her heirs and assigns forever." It does not appear that this deed was made pursuant to the order or direction of any court. See Revision, section 2460. It is claimed that this conveyance is ineffectual to pass the legal title, and that the title is still in the estate of B. M. Cooley, deceased. Let all

this be conceded. How, then, stands the case? In July, 1856, B. M. Cooley executed his bond to J. R. Millard, conditioned for a conveyance of the property upon the payment of the purchase price. The evidence shows that in September, 1860, the purchase price had been fully paid. At that date, then, J. R. Millard was entitled to a conveyance from the estate of Cooley. He had the equitable title to the property in controversy. This equitable interest, at least, passed to Marsh, by the warranty deed from Millard and wife in March, 1862. It does not appear that he had any actual knowledge of the note to Whittam, and, as we have seen, the mortgage imparted no constructive notice.

The defendant Dull purchased in September, 1864, also without actual or constructive notice, and paid, as appears, a consideration of $600. Under such circumstances his equity is superior to that of the plaintiffs, who acquired no lien upon the premises until they recovered their judgment in September, 1869.

It becomes unnecessary to consider the question of the statute of limitations, upon which defendants rely, or whether Phebe Millard, as defendants claim, purchased the property with her own means.

REVERSED.